Argued and submitted February 28, reversed and remanded May 25, reconsideration denied July 15, petition for review denied August 16, 1983 (295 Or 541)

## BLUE SKY FOREST PRODUCTS, INC.,
*Respondent,*

*v.*

## NEW HAMPSHIRE DOORS CO.,
*Appellant.*

(29133; CA A24205)

663 P2d 813

Ronald L. Marceau, Bend, argued the cause for appellant. With him on the briefs was Johnson, Marceau, Karnopp & Petersen, Bend.

Jim N. Slothower, Bend, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this action for breach of contract, defendant appeals from a judgment for plaintiff entered after the trial court found that defendant breached the contract by wrongfully rejecting lumber sold to it by plaintiff. We reverse.

In November, 1979, plaintiff and defendant entered into a contract by which plaintiff agreed to sell and defendant agreed to purchase lumber for the purpose of manufacturing garage doors. Subsequently, plaintiff determined that the mill had mismanufactured some of the lumber and that it would not conform to the terms of the purchase order. It contacted defendant, and the parties agreed to modify their contract to provide that defendant would accept the lumber with "occasional defects," for which there would be a price reduction. Both parties understood that the modification meant that from 5 to 10 percent of the boards might have defects.

The lumber was shipped as agreed, and an invoice was sent to the defendant on March 26, 1980. Defendant examined the invoice on receipt and noted that it showed a reduced price for 23,452 units out of a total of 28,262. Defendant believed (mistakenly, according to the trial court) based on its reading of the invoice, that 23,452 units contained defects. The railroad company, pursuant to its general practice, called defendant when the boxcar arrived at a yard 13 miles from defendant's plant to advise defendant that the lumber was about to be delivered. Defendant informed the railroad that it would not accept the lumber.

The railroad notified plaintiff immediately by a telegram dated April 14, 1980, that the lumber was rejected and was being held by the railroad at plaintiff's risk. On receipt of the telegram, plaintiff called defendant and was informed that the lumber had been rejected. There ensued a series of telephone conversations between the parties, as a result of which plaintiff paid the railroad to ship the lumber the remaining distance to defendant's plant, where it was unloaded. Defendant testified that it inspected the lumber on May 21, 1980, when it was unloaded and observed that 80 percent of the shipment contained serious defects that made the lumber unusable for garage doors.

The trial court held that defendant's rejection of the lumber had to be judged on the basis of the knowledge that

defendant had at the time of the rejection. Because the trial court found that defendant's rejection had been based on a misunderstanding of the invoice, the rejection was not justified and was, therefore, wrongful. The court further held that defendant could not alter the wrongful nature of the rejection by its subsequent determination that the actual condition of the lumber justified its rejection, because that was not known to defendant at the time of rejection. The question is whether the trial court erred as a matter of law in so ruling.

Under the Uniform Commercial Code, there cannot be an effective rejection of goods until the goods have been tendered. ORS 72.6020(1) provides:

> "Rejection of goods must be within a reasonable time after their delivery or tender. * * *"

ORS 72.5030(1) provides:

> "Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. * * *"

Plaintiff, by shipping the lumber consigned to defendant and providing defendant with an invoice from which it could determine the location of the lumber, had effectively put and held the lumber at defendant's disposition and, therefore, had tendered the lumber to defendant. The defendant rejected the lumber only after it was notified routinely by the railroad that the lumber was in the railroad yard 13 miles away. The sole reason defendant did not actually receive the lumber at its plant before it was rejected was defendant's unilateral action in stopping the shipment in transit. Because defendant's rejection of the goods occurred after tender but prior to the time the goods were delivered, it is clear that the rejection took place "within a reasonable time * * * after their * * * tender." Therefore, defendant's rejection was effective, and plaintiff's remedy is for wrongful rejection, if the rejection was wrongful.[1]

---

[1] The trial court's statement during trial that "a wrongful rejection * * * would constitute an acceptance" is not correct. The remedies for wrongful rejection are separately set out and do not include treating that action as an acceptance. *See* ORS 72.6020(3) and ORS 72.7030. An *ineffective* rejection may be an acceptance. *See* ORS 72.6060.

ORS 72.6010 provides that a buyer may rightfully reject "if the goods or the tender of delivery fail in any respect to conform to the contract * * *." The only provision of the UCC that requires a buyer to give a seller any reason for rejection is ORS 72.6050, which states:

"(1)   The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach:

"(a)   Where the seller could have cured it if stated seasonably; or

"(b)   Between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

"* * * * *."

Accordingly, regardless of the reason given by the buyer, a rejection will not be held to be wrongful unless (1) the buyer fails to establish that the goods did not, in fact, conform to the contract, (2) reasonable inspection would have revealed the defect and the seller could have cured it if buyer had seasonably stated the defect, or (3) reasonable notice would have revealed the defects, seller and buyer are both merchants and seller made a request in writing for a full and final written statement of all defects on which buyer relies.[2]

---

[2] As noted in 2 Anderson, *Anderson on the U.C.C.*, 185-86, §§ 2-605:4, 2-605:5 (2d ed 1971):

"§2-605:4. A party making a rejection of the goods must to a certain extent inform the seller of the basis for the rejection or he is thereafter barred from proving such basis as the justification for his rejection or establishing that the seller has been guilty of a breach of the contract for sale.

"Such waiver through failure to inform the seller takes place as to any defect in the goods (1) which reasonable inspection would reveal, and (2) which the seller could have cured if he had been seasonably informed thereof.

"If reasonable inspection would not have originally disclosed the defect, or if the seller could not have cured the defect upon seasonable notice, there is no waiver through the buyer's failure to inform the seller of the defect." (Footnotes omitted.)

"§2-605:5. As between merchants a greater degree of specification of defects may be required. After rejection of goods a merchant-seller may make a written request upon the merchant-buyer for a full and final settlement of all defects on which the merchant-buyer proposes to rely. Any defect which is not stated therein is waived, as long as it is a defect which reasonable inspection would have revealed. If the defect would not have been revealed by such inspection there is no waiver." (Footnotes omitted.)

■ The trial court admitted evidence of the percentage of defects that actually existed in the lumber at the time it was inspected at defendant's plant. However, because the court ruled that the wrongfulness of defendant's rejection must be judged solely on defendant's knowledge at the time it rejected the goods, it made no findings of fact or conclusions of law as to the actual condition of the lumber, whether it conformed to the provisions of the contract, whether seller could have cured the defects if given seasonable notice, whether seller and buyer were merchants and whether buyer failed to list the defects in response to a written request of seller. Although plaintiff requested findings pursuant to ORCP 62, the trial court failed to make findings on the foregoing questions, because it decided the case on an erroneous legal theory. Accordingly, we remand the case to the trial court for the factual determinations listed above.

Reversed and remanded for further proceedings not inconsistent with this opinion.